IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FREDERICK D. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04cv3284 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| HAROLD W. CLARKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing no. 28, the Motion to Dismiss filed by the defendants, Harold W. Clarke, et al. In his Amended Complaint (filing no. 13), the plaintiff, Frederick D. Moore, a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"), asserts federal civil rights claims pursuant to 42 U.S.C. § 1983. The plaintiff alleges that the defendants failed to protect him from assault by two inmates who had a history of violent behavior and who attacked the plaintiff in a completely unsupervised area of the Cornhusker State Industries workplace at the Nebraska State Penitentiary ("NSP"). As a result of the recounted events, the plaintiff suffered physical injury as well as termination of his prison employment. The plaintiff has sued DCS corrections officials in their individual and official capacities for compensatory and punitive damages, alleging a violation of the Eighth Amendment to the United States Constitution.

### Official Capacity Claims

A suit against a public employee in his or her *official* capacity is merely a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, a claim against a corrections officer, in his or her official capacity, is in reality a claim against the entity that employs the officer. DCS is an agency of the State of Nebraska, and the

1

defendants are all employees of the State.

As the defendants point out, State employees in their official capacity share the immunity of the State of Nebraska under the Eleventh Amendment to the United States Constitution. State sovereign immunity, recognized and preserved by the Eleventh Amendment, prohibits a private party from suing the State or its agencies and employees in their official capacity, except insofar as the state or the Congress of the United States has abrogated the state's sovereign immunity. See, e.g., Morstad v. Department of Corrections and Rehabilitation, 147 F.3d 741, 744 (8th Cir. 1998): "[A]bsent a waiver, the Eleventh Amendment immunizes the state and its officials from § 1983 liability." See also Burk v. Beene, 948 F.2d 489, 492-93 (8th Cir. 1991): "Eleventh Amendment jurisprudence is well-settled: 'a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.'..." (Citations omitted.) No waiver of sovereign immunity applies to this case.

Furthermore, "[a] State's constitutional interest in its sovereign immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984) (emphasis in original). See also Becker v. University of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999): "This court has previously held that the State of Nebraska has not consented to federal court jurisdiction." See also Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 39-40 (1994): "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Accord Trevelen v. University of Minnesota, 73 F.3d 816, 818 (8th Cir. 1996): "The Supreme Court has interpreted the Eleventh Amendment to bar actions

in federal court against a state by its citizens." The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court. Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001).

For the foregoing reasons, the plaintiff's claims against each defendant in his or her official capacity must be dismissed.

### Individual Capacity Claims

Although the plaintiff sued all defendants in both capacities, he completed service of process on only one individual-capacity defendant. However, even if the plaintiff had served all of the DCS employees in their individual capacity, he has not stated a claim on which relief may be granted for violation of the Constitution or laws of the United States. All of the defendants are supervisory personnel in DCS or at the NSP who, as the plaintiff states, owed him a duty of care to protect him from violence by other inmates.

However, breach of such a duty of care constitutes a claim of negligence, and claims of negligence arise under Nebraska law, not federal law. While the plaintiff might have been able to pursue tort claims against the defendants in a state court, negligence and similar torts by prison officials are not actionable under 42 U.S.C. § 1983.

Failure to Protect

It is true that "[p]ersons involuntarily confined by the state have a constitutional right to safe conditions of confinement." Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996). However, "[n]ot every deviation from ideally safe conditions amounts to a constitutional violation." Id.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to guarantee the safety of inmates and to

3

protect them from violence by other prisoners. See, e.g., Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003): "The Supreme Court has held that the Eighth Amendment requires prison officials to take 'reasonable measures to guarantee the safety of inmates [and] ... to protect prisoners from violence at the hands of other prisoners.' Farmer v. Brennan, 511 U.S. 825, 832-33 ... (1994) (internal quotation marks and citations omitted)."

To prevail on an Eighth Amendment failure-to-protect claim, the plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the defendant subjectively knew of and disregarded an excessive risk to the plaintiff's safety. Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 644 (8th Cir. 1996); Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996).

In order to satisfy the second part of a failure-to-protect claim, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003), *citing* Farmer v. Brennan, 511 U.S. 825, 837 (1994). In other words, "[a] government official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." Berry v. Sherman, 365 F.3d 631, 634 (8th Cir. 2004).

Negligence by a defendant does not suffice to establish deliberate indifference. See, e.g., Pagels v. Morrison, 335 F.3d 736, 742 (8th Cir. 2003) ("negligence cannot give rise to an Eighth Amendment failure-to-protect claim"); Tucker v. Evans, 276 F.3d 999, 1002 (8th Cir. 2002) (negligence, even gross negligence, is insufficient to prove a violation of the Eighth Amendment). Deliberate indifference requires the reckless or callous disregard of a known, excessive risk of serious harm to the safety of the plaintiff or other inmates in the

plaintiff's position. Tucker v. Evans, 276 at 1001.

In this case, the Amended Complaint does not give rise to an inference that any defendant subjectively acted, or failed to act, with deliberate indifference to the plaintiff's safety. Instead, the alleged conduct constitutes, at most, failure to prevent a "surprise attack" by other inmates. Id. Even if a defendant *should have known* of the risk, failure to discern what one should have perceived is no more than negligence. See Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998): "An 'official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'"

State Tort Claims Act

The Neb. Const. art. V, § 22, provides that "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." "This constitutional provision, however, is not self-executing and requires legislative action to waive the State's sovereign immunity." King v. State, 614 N.W.2d 341, 346 (Neb. 2000). For example, the Nebraska Legislature has waived sovereign immunity for certain kinds of tort actions against the state and its agencies. See the Nebraska State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 *et seq.* However, the waiver of sovereign immunity under the State Tort Claims Act does not extend to actions maintained in federal court. See Neb. Rev. Stat. § 81-8,214: "Suits shall be brought in the district court of the county in which the act or omission complained of occurred or, if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County." Thus, section 81-8,214 is a limited waiver of sovereign immunity which permits an action for negligence and other torts against the state or a state agency exclusively in

5

state district court.   See, e.g., Doran By and Through Doran v. Condon, 983 F.Supp. 886, 890 (D. Neb. 1997) (State Tort Claims Act did not waive state's Eleventh Amendment immunity from suit in federal court; language of Act did not expressly specify the state's intent to subject itself to suit in federal court).

For the foregoing reasons, the plaintiff's claims against each defendant in his or her individual capacity must be dismissed.

THEREFORE, IT IS ORDERED:

1. That filing no. 28, the defendant's Motion to Dismiss, is granted; and

2. That a separate judgment will be entered accordingly.

DATED this 26th day of July, 2005.

BY THE COURT:

/s *Richard G. Kopf*
United States District Judge